## BAY SHORE INV. CO. v. PALMER.

(District Court, S. D. Florida. December 12, 1922.)

1. **Courts ⬅➡347—General denial in answer not sufficient.**
   Under equity rule 30 (201 Fed. v, 118 C. C. A. v), requiring an answer to avoid any general denial, but to specifically admit, deny, or explain the facts alleged in the bill, where a bill sets out a copy of a note sued on, which shows on its face that it is past due, and alleges default, a general denial of default in the answer is not sufficient.

2. **Courts ⬅➡347—Answer held not to make an issue.**
   A general denial in the answer that complainant is entitled to the relief prayed for is insufficient to make an issue.

3. **Principal and agent ⬅➡33—Provision of contract giving principal right to terminate agency for unsatisfactory service held valid.**
   In a contract by which defendant was made sole agent for complainant corporation for the sale of lots, and providing that the contract might be terminated by either party on 30 days' notice, but that it should not be terminated by complainant, except for unsatisfactory performance by defendant, a further provision that complainant's directors should be sole judge of such unsatisfactory performance is valid and binding, and a court may not substitute its judgment for that of the directors.

4. **Courts ⬅➡347—Legal claim not subject of set-off.**
   Under equity rule 30 (201 Fed. v, 118 C. C. A. v), a claim of defendant for services rendered to complainant after making of the contract in suit cannot be pleaded as a counterclaim or set-off.

In Equity. Suit by the Bay Shore Investment Company against T. W. Palmer. On motions to strike portions of answer. Granted.

R. F. Burdine, of Miami, Fla., and Clifford L. Anderson, of Atlanta, Ga., for complainant.

John E. & Julian Hartridge, of Jacksonville, Fla., and E. B. Kurtz, of Miami, Fla., for defendant.

CALL, District Judge. Bill was filed alleging the making and delivery to the complainant by defendant of a promissory note, under seal, for $49,500, by which certain shares of stock were hypothecated as collateral security, and praying for reformation of said note in certain particulars and to foreclose on and sell said collateral.

The defendant answered, admitting the execution of the note and the mutual mistakes alleged for reformation. He then sets out at length matters occurring between himself and certain persons preceding the making of the contract afterwards entered into between himself and the complainant in this suit, and seeks by the allegations following to establish a counter claim, and avoid the note sued on in this case, attaching to his answer a copy of the contract between himself and the complainant. Motions were made to strike certain portions of the answer on various grounds.

[1] The fourth paragraph of the bill alleges default in the payment of the principal and interest, the placing same in the hands of an attorney, and that it is entitled to attorney's fees. The answer denies that there was default in payment of principal and interest, and de-

nies that the complainant is entitled to attorney's fees. The attack on this paragraph by the motion is based on rule 30 of the Equity Rules (201 Fed. v, 118 C. C. A. v).

Copy of the note is attached to the bill and made a part thereof, and the execution of this note is admitted in the answer. This paper shows that it was dated March 21, 1921, and due one year after date. The suit was commenced June 28, 1922. Under this state of facts, it is not sufficient for the answer to merely deny that the instrument was due. It seems to me to violate the spirit and intent of rule 30 of the Equity Rules in being a general denial, without specifically denying the facts upon which the complainant relies, to wit, the due date of the note.

[2] The fifth paragraph of the answer denies complainant is entitled to the relief prayed. This paragraph violates, it seems to me, the same rule. The relief prayed must rest on the facts alleged in the bill. These facts are not denied. This is not sufficient in my judgment to make an issue. The rest of the answer is devoted to the counterclaim of the defendant, and seeks to hold the complainant for services rendered to Whitten and Nunnally in the purchase of lands before the formation of the corporation, and for certain services rendered to the corporation after its organization, and for damages resulting to defendant by the breach of the sales agency contract. The allegations of the answer also seek to show that, while the note is due upon its face, still, by reason of the contract between the parties, it is not due by reason of a breach of the contract by the complainant.

[3] In order to pass upon the motions to strike these portions of the answer, it is necessary that this contract be construed by the court. This contract was made by the parties on March 17, 1921. This contract, after stating the transactions between the defendant and Whitten and Nunnally in the purchase of lands, declared that a corporation would be formed for the purpose of taking them over, that the defendant should take an interest in such corporation and the terms and conditions under which he should so become interested, and the terms and conditions under which he should thereafter act as agent in the subdivision and sale of the property; these agreements being oral, and for the first time reduced to writing in this contract. The contract then provides that it represents all the understandings and agreements between the defendant and complainant and between the defendant and Whitten and Nunnally; that, in full compensation to defendant for all services rendered by him in connection with procurement of any lands and properties purchased by the complainant, the defendant—

"is to be permitted to subscribe for and purchase forty-five hundred (4,500) shares of the common stock of the company at and for ten dollars ($10) per share. He is to be permitted, nevertheless, to pay for said stock by executing his note to the company for the full amount of the purchase price thereof, payable on demand; * * * the stock so subscribed for and purchased by the agent to be issued, but to be retained by the company as collateral security for the payment of the note."

The third clause of contract is as follows: ·

"(3) The company will not demand the payment of the said note as long as the company permits the agent to continue to make sales of property for it

under the provisions of this agreement hereinafter expressed, but whenever under the terms of this agreement the company shall be due to the agent any sum of money as a commission on any sales of property made by the agent for account the company, the company shall be entitled to retain one-half of such commissions and apply the same as a payment on said note, first applying the same to the payment of accrued interest and then as a credit on the principal."

And the fourth clause:

"(4) The agent shall, as long as this sales contract is of force, have the exclusive right to make sales of any property belonging to the company from time to time, at such prices and upon such terms as the company may authorize, and he shall be entitled to receive, as his compensation for all sales negotiated and made by him, a commission of 10 per cent. (10%) of the gross amount of the purchase money to be paid on said sales, which commission may be deducted from the first cash payment made thereon: Provided, that if clients of J. H. Nunnally and Francis S. Whitten purchase any of said property through the agent, said agent shall be entitled to receive only six per cent. (6%) of the purchase price as his commission, and shall pay over the remaining four per cent. (4%) thereof to the said J. H. Nunnally and Francis S. Whitten, or to the one of them who influenced the sale."

The principal bone of contention in the contract, and upon the construction of which hinges the main controversy in this case, is the fifth clause, which is as follows:

"(5) Either party hereto has the right to terminate this agreement as to so much of it as relates to sales by the agent of properties belonging to the company upon thirty (30) days' written notice thereof, the right on the part of the company to terminate said agreement, however, to be based only upon any unsatisfactory performance by the agent, of which unsatisfactory performance the directors of the company are to be the sole judge; such termination by either party shall not relieve the agent from liability on his note for the purchase of the stock, and such agent shall be entitled to commissions on all sales for which he has at the time of such expiration procured binding contracts, all in accordance with the terms of this agreement, even though such sales may not be consummated by the delivery of deeds or other instruments finally consummating the transaction."

The balance of said contract is not material to the controversy here.

On April 4, 1922, the complainant wrote the defendant that his services were unsatisfactory, and terminated the sales agency portion of the contract, and this suit to foreclose the lien on the hypothecated stock was begun. The complainant maintains it had a right under the contract of March 17th to terminate the sales agency whenever in the judgment of its board of directors the services of defendant were unsatisfactory, and that such board were the sole judges of such unsatisfactory performance. The defendant, on the other hand, maintains that such dissatisfaction must be based upon reasonable grounds, to be inquired into by the court.

It is a well-settled doctrine that courts, in construing contracts, will endeavor to arrive at the intent of the parties from the language used in the entire contract, and, having ascertained this intent, construe it accordingly; the parties being sui juris and the objects legal. Applying this rule, this contract seems to have been carefully prepared to cover all phases of the business, and it specifically provides that it may be terminated by either party on 30 days' written notice—the defendant for no reason except his desire, but the complainant only on

unsatisfactory performance of his duties by the defendant. But it also specifically provides that the board of directors of the company or complainant were to be the sole judges of such unsatisfactory performance.

This contract may have been ill advised on the part of the defendant, but the court has no power to relieve him of this phase of his contract, solemnly entered into by him, and substitute its judgment in place of the board of directors as to whether said services were unsatisfactory; nor to relieve him of the effect of the board of directors finding his services unsatisfactory upon the note given for the purchase of stock. This would, in effect, be the court making a new contract for the parties and substituting the judgment of this court on the unsatisfactory nature of the services, for that of the tribunal selected by the parties. I am of opinion that the board of directors of the complainant could terminate the agency at any time, when in their judgment his services became unsatisfactory to the corporation, and that by so doing the corporation was not subjected to damages in the claim for recoupment pleaded in the answer.

[4] Time will not permit me to refer to each clause of the answer, but I notice in the eighth clause there is a claim for services performed in making improvements, platting the land, expenditure of money for improvements, and purchasing other lands for the complainant, and for money paid out for clerical assistance, etc. Clearly these claims cannot be allowed in this suit. Rule 30 of the Equity Rules provides:

"The answer must state in short and simple form any counterclaim arising out of the transaction, which is the subject-matter of the suit, and may without cross-bill set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim so set up shall have the same effect as a cross-suit."

These claims for services rendered the complainant subsequent to the making of the contract are clearly not counterclaims arising out of the transaction which is the subject-matter of complainant's suit, and are not subject to an independent suit in equity. The allegations in certain clauses of the answer are intended to show that by reason of the termination of the agency by complainant, the contract was broken by it, and the defendant relieved from the payment of the note. This defense I do not think well taken. It must be borne in mind that the suit is brought to foreclose the lien given by the note; that said note was not "on demand" as specified in the contract, and was for 49 shares of stock instead of "45" as mentioned in the contract; and that said note according to its tenor was due "one year after date" and the due date has passed.

I am of opinion that the motions to strike must be granted. It will be so ordered.